Wayne M. PATTERSON, Plaintiff and Respondent,

v.

ALPINE CITY, a Municipal Corporation, Defendant and Appellant.

No. 18114.

Supreme Court of Utah.

April 21, 1983.

John C. Backlund, Provo, for defendant and appellant.

Ray M. Harding, Pleasant Grove, for plaintiff and respondent.

HOWE, Justice:

Defendant Alpine City appeals from a summary judgment in favor of plaintiff declaring a sewer connection fee invalid.

In 1976 Alpine City joined with American Fork, Lehi and Pleasant Grove in establishing the Timpanogos Special Service District to create a waste water treatment facility serving the named cities. In 1977, after obtaining various loans and grants, Alpine City had to deposit the sum of $375,000 before funding was approved by the appropriate federal agencies. Alpine City estimated that with a projected hookup of 540 sewer connections, the initial price per connection would be $700.

In 1978 Alpine City enacted an ordinance which provided that a fee for connection to the city sewer system could be fixed from time to time by resolution of the city coun-

cil. Thereafter, without written resolution, Alpine City established a plan to sell sewer connection permits for the initial price of $700. To induce early purchase of the required number (540) of sewer connections to raise the $375,000, Alpine advised the public that the fee would be increased after one month to $1,000, and after two months to $1,500. Anyone could purchase the permits at $700 for subsequent resale to potential builders or homeowners.

In December of 1979 plaintiff purchased his sewer connection permit under protest for the price of $1,500 and brought this action to have that fee declared void and unenforceable, and to permanently enjoin Alpine City from assessing the fee. On motion for summary judgment brought by the plaintiff, the court below entered a partial summary judgment in favor of plaintiff ruling (1) that the fee was illegally assessed against the plaintiff because no written resolution had been adopted by the city council before December of 1979, and (2) that the plan was ultra vires under Alpine's statutory authority. The court left for trial the issue of whether plaintiff was entitled to a refund of the full amount of $1,500. Pursuant to stipulation of the parties, the remaining issue was dismissed and an order making the partial summary judgment final was entered.

Alpine City appeals, contending that summary judgment was not proper and that the sewer connection fee plan adopted by it was a valid exercise of its general police powers.

■ We now address the two points of law on which the lower court found for plaintiff in order to determine whether summary judgment was proper. Under U.C.A., 1953, § 10–3–717, (Supp.1981) as enacted in 1977, all municipal governments "may exercise all administrative powers by resolution including, but not limited to: (1) Establishing water and sewer rates; ..." Section 10–3–506, enacted the same year, provides as follows:

A roll call vote shall be taken and recorded for all ordinances, resolutions, and any action which would create a liability against the municipality and in any other

case at the request of any member of the governing body by a "yes" or a "no" vote and shall be recorded. Every resolution or ordinance shall be in writing before the vote is taken.

Alpine City admitted in its response to plaintiff's request for production of documents that "[p]rior to December 1979, defendant had not by resolution or ordinance in writing established a sewer connection fee for connection to the Alpine system." The language of the above statute requiring that all resolutions *shall* be in writing is mandatory. The trial court thus did not err in concluding that the sewer connection fee was not established as required by law and therefore invalid.

Cities and towns are empowered to charge for the use of their sewer systems by § 10–8–38. That statute provides in pertinent part:

Any city or town may, for the purpose of defraying the cost of construction, reconstruction, maintenance or operation of any sewer system or sewage treatment plant, provide for mandatory hookup where the sewer is available and within 300 feet of any property line with any building used for human occupancy and *make a reasonable charge for the use thereof.* [Emphasis added.]

■ The scope of power granted by the Legislature under this statute is clear. Municipalities may make a reasonable charge for the use of a sewer system in order that it be self-sustaining. *Home Builders Ass'n. v. Provo City,* 28 Utah 2d 402, 503 P.2d 451 (1972); *Banberry Dev. Corp. v. South Jordan,* Utah, 631 P.2d 899 (1981). *Lafferty v. Payson City,* Utah, 642 P.2d 376 (1982). No greater charge is authorized. We do not purport to know whether $700, $1,000 or $1,500, or none of those amounts, is in fact a reasonable charge to construct, maintain and operate Alpine's system. But all three amounts obviously cannot be reasonable within a two month period.

■ Alpine City cites *Rupp v. Grantsville,* Utah, 610 P.2d 338 (1980) in support of its contention that the rate increase was proper. That case is readily distinguisha-

ble. There an original charge of $250 for each residence connected to the system was raised to $300 when it was found that the city had failed to include the price for 18,-000 linear feet of necessary sewer laterals. The affected users received letters explaining the mistake, advertisements were run, and a public meeting was held. Following open discussion, the increase was voted upon and approved. Alpine City, on the other hand, does not contend that its subsequent increases in the connection fee were required to cover increased costs, but concedes that they were made to induce early purchase of the required 540 connections. In so doing, Alpine did not uniformly treat all users.

11 E. McQuillin, The Law of Municipal Corporations § 31.30a (3d ed. 1982) states that "[t]he charges imposed for using or for making connection with municipal sewers must be reasonable, not arbitrary, and uniform, not discriminatory." See also 3 Yokley, Municipal Corporations § 503 (1958), stating that "[t]he rates for municipally owned utilities, such as a sanitary sewer system, must be uniformly applied, or the entire rate structure will be set aside."

Alpine maintains that the "increases were required to enable the city to repay its bonded indebtedness on the project and its share of the bonded indebtedness of the Timpanogos Special Service District, the regional agency providing sewer treatment facilities." If the connection fee is indeed to be used to retire bonded indebtedness, then all users on the system must be treated equally and late-comers cannot be subjected to an arbitrary increase of over 100% in a period of two months. See *Weber Basin Home Builders' Ass'n. v. Roy City,* 26 Utah 2d 215, 487 P.2d 866 (1971).

The summary judgment granted below is affirmed. Costs to respondent.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.